## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### CHARLESTON DIVISION

| | | |
|---|---|---|
| DWAYNE HOWARD FULLER, | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **CIVIL ACTION NO. 2:15-11835** |
| | ) | |
| CAROLYN. W. COLVIN, | ) | |
| **Acting Commissioner of Social Security,** | ) | |
| **Defendant.** | ) | |

### PROPOSED FINDINGS AND RECOMMENDATION

This is an action seeking review of the final decision of the Commissioner of Social Security denying the Plaintiff's application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI), under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f. By Standing Orders entered August 10, 2015, and January 5, 2016 (Document Nos. 4 and 14.), this case was referred to the undersigned United States Magistrate Judge to consider the pleadings and evidence, and to submit Proposed Findings of Fact and Recommendation for disposition, all pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending before the Court are the parties' cross-Motions for Judgment on the Pleadings (Document Nos. 11 and 16.), and Plaintiff's Reply. (Document No. 18.)

The Plaintiff, Dwayne Howard Fuller (hereinafter referred to as "Claimant"), filed applications for DIB and SSI on December 14, 2012 (protective filing date), alleging disability as of June 1, 2012, due to gout, high blood pressure, and breathing troubles.[1] (Tr. at 14, 188-94, 195-201, 223, 228.) The claims were denied initially and upon reconsideration. (Tr. at 14, 51-52, 53-

---

[1] On his form Disability Report - Appeal, dated November 1, 2013, Claimant asserted that he experienced more pain in his legs and that his gout and blood pressure had worsened. (Tr. at 270.)

58, 59-64, 65-66, 67-80, 81-94, 97-99, 103-05, 108-10, 114-16, 120-22, 123-25.) On October 31, 2013, Claimant requested a hearing before an Administrative Law Judge (ALJ). (Tr. at 126-27.) A hearing was held on November 12, 2014, before the Honorable Peter Jung. (Tr. at 27-50.) By decision dated January 8, 2015, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 14-25.) The ALJ's decision became the final decision of the Commissioner on June 11, 2015, when the Appeals Council denied Claimant's request for review. (Tr. at 1-5.) Claimant filed the present action seeking judicial review of the administrative decision on August 6, 2015, pursuant to 42 U.S.C. § 405(g). (Document No. 2.)

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(I), a claimant for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920 (2014). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. §§ 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. 20 C.F.R. §§

404.1520(e), 416.920(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience.   20 C.F.R. §§ 404.1520(f), 416.920(f) (2014). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he had not engaged in substantial gainful activity since the alleged onset date, June 1, 2012. (Tr. at 16, Finding No. 2.) Under the second inquiry, the ALJ found that Claimant suffered from "hypertension, gout, osteoarthritis of the right elbow and knees, major depressive disorder, and anxiety disorder" which were severe impairments. (Tr. at 17, Finding No. 3.) At the third inquiry, the ALJ concluded that Claimant's impairments did not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 17, Finding No. 4.) The ALJ then found that Claimant had the residual functional capacity for medium work, as follows:

> [C]laimant has the residual functional capacity to lift and carry 50 pounds occasionally and 25 pounds frequently, stand and walk 6 hours both in an 8-hour workday. He may occasionally climb ladders, ropes, or scaffolds and kneel and frequently climb ramps and stairs, balance, stoop, crouch, and crawl. The [C]laimant may frequently perform reaching overhead, in front, and laterally with the right upper extremity. He must avoid concentrated exposure to extreme heat, extreme cold, wetness, vibration, fumes, odors, dust, gases, poor ventilation, hazards, machinery, and heights. The [C]laimant is limited to simple repetitive

3

routine tasks.

(Tr. at 19, Finding No. 5.) At step four, the ALJ found that Claimant was able to return to his past relevant work as a produce stocker. (Tr. at 23, Finding No. 6.) On the basis of testimony of a Vocational Expert ("VE") taken at the administrative hearing, the ALJ further concluded that Claimant could perform jobs such as a hand packer, dining room attendant, and cleaner at the unskilled, medium level of exertion. (Tr. at 24-25.) On these bases, benefits were denied. (Tr. at 25, Finding No. 7.)

<u>Scope of Review</u>

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In <u>Blalock v. Richardson</u>, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

<u>Blalock v. Richardson</u>, 483 F.2d 773, 776 (4th Cir. 1972) (quoting <u>Laws v. Celebrezze</u>, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence. <u>Hays v. Sullivan</u>, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." <u>Oppenheim v. Finch</u>, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is not supported by substantial evidence.

Claimant's Background

Claimant was born on November 7, 1959, and was 55 years old at the time of the administrative hearing on November 12, 2014. (Tr. at 24, 33, 188, 195.) The ALJ found that Claimant had at least a high school education and was able to communicate in English. (Tr. at 24, 33, 227, 229.) In the past, he worked as a head cook in a restaurant, a kitchen supervisor in a retirement home, a laborer fireplace installer, and a produce stocker. (Tr. at 24, 44-45, 229.)

The Medical Record

The Court has considered all evidence of record, including the medical evidence and will summarize it and discuss it below in relation to Claimant's arguments.

On October 25, 2012, Claimant presented to the emergency department at Camden Clark Medical Center ("CCMC") for acute right knee pain with a three-day history. (Tr. at 299.) Examination revealed that Claimant's right knee was painful, tender, and swollen. (Tr. at 300.) He was assessed with gout. (Id.) On November 14, 2012, Claimant again presented for emergency treatment at CCMC for complaints of left knee and left ankle pain. (Tr. at 301.) Claimant was in mild pain, accompanied by tenderness, swelling, limited motion, and an inability to bear weight. (Tr. at 302.) He was assessed with acute left knee and left ankle arthralgia/effusion. (Id.) He was discharged in improved and stable condition. (Id.)

On December 17, 2012, Claimant sought treatment as a new patient at the Good Samaritan Clinic, with a history of gout and eye trouble. (Tr. at 310-11.) He reported occasional shortness of breath and palpitations when hot, accompanied by dizziness and double vision. (Tr. at 310.) He reported a history of arthritis and gout in his hands, knees, or toes. (Id.) Physical and mental status exams were unremarkable and Barbara Lott, FNP-C, assessed hypertension, osteoarthritis, tobacco abuse, gout, and hemorrhoids. (Tr. at 311.) Claimant presented to CCMC by ambulance, on

December 18, 2012, with complaints of mildly moderate chest pain. (Tr. at 303.) He was counseled on smoking cessation and was discharged in improved and stable condition. (Tr. at 304.)

On January 15, 2013, Claimant presented to CCMC with complaints of right knee pain with a two-week history. (Tr. at 305, 382.) It was swollen and he walked with an antalgic gait. (Tr. at 305-06, 382-83.) He was diagnosed with acute arthritis and gout, given medication, and discharged in improved and stable condition. (Tr. at 306, 383.) On January 23, 2013, Claimant followed-up at the Good Samaritan Clinic ("GSC") for hypertension and gout. (Tr. at 312-13.) Physical and mental exams again were normal and Ms. Lott diagnosed hypertension, tobacco abuse, and gout and counseled Claimant on exercise, nutrition, and medication therapy. (Tr. at 313.) On February 20, 2013, Claimant followed-up at GSC for hypertension and reported that he felt much better and could tell that his blood pressured had lowered. (Tr. at 314.) He also reported only one gout episode since having started medication. (Id.) Physical exam revealed an abnormal heart rate and right knee swelling and tenderness. (Tr. at 315.) Mental status was normal. (Id.) Ms. Lott assessed hypertension, tobacco abuse, gout, and unspecified tachycardia. (Id.) Claimant's medications were adjusted. (Tr. at 316.) On March 20, 2013, Claimant reported no problems with any of the medications and denied any problems with gout. (Tr. at 317.) Mental and physical exams essentially were normal, with regular heart rate and no swelling or tenderness of the extremities. (Tr. at 318.)

On April 9, 2013, Claimant presented to CCMC and complained of dizziness, nausea, vomiting, weakness, and left rib pain, after having taken the same medication twice, by accident, and having fallen and hit ribs on the toilet. (Tr. at 308, 380.) He was assessed with a left rib contusion and discharged home in stable condition. (Tr. at 309, 381.) Chest x-rays showed no active disease, and his heart and lungs appeared essentially normal. (Tr. at 307.)

On April 30, 2013, Dr. Porfirio Pascasio, M.D., a State reviewing consultant, opined that Claimant's essential hypertension and COPD were severe impairments (Tr. at 56-57, 62-63.) The evidence was insufficient to conduct an RFC assessment. (Tr. at 57, 63.)

On August 12, 2013, Kara Gettman-Hughes, M.A., a licensed psychologist, conducted a consultative examination at the request of the West Virginia Disability Determination Service ("DDS"). (Tr. at 327-32.) Claimant traveled alone to the evaluation and presented with an unsteady gait. (Tr. at 327.) Claimant reported memory problems, feelings of sadness and hopelessness, feelings of failure and guilt, a loss of interest in activities, crying spells, difficulty making decisions, impaired sleep, fatigue, excessive worry, frustration and irritation, restlessness, muscle tension, and problems concentrating. (Tr. at 328.) He denied having received any mental health treatment. (Tr. at 329.) On mental status examination, Claimant appeared casually dressed with proper hygiene, was cooperative but maintained poor eye contact, exhibited responsive and coherent speech, was oriented, had an anxious mood and restricted affect, and had understandable thoughts without delusions, paranoia, obsessive thoughts, or compulsive behaviors. (Tr. at 329-30.) Claimant's judgment was moderately impaired, with poor insight. (Tr. at 330.) Dr. Gettman-Hughes opined that Claimant's immediate memory was intact, his pace was slightly slow, his persistence and social functioning were mildly impaired, his concentration was moderately impaired, his remote memory was fair, and his recent memory was severely impaired. (Id.)

Ms. Gettman-Hughes diagnosed major depressive disorder, single episode, moderate and generalized anxiety disorder. (Tr. at 330.) She noted Claimant's activities to have included going to the store monthly, occasionally receiving visits from family and friends, attending medical appointments, occasionally went to church, and managing his own finances. (Tr. at 331.) Ms. Gettman-Hughes opined that Claimant's prognosis was poor, though he was capable of managing

his funds. (<u>Id.</u>)

On August 22, 2013, Claimant initiated treatment with Dr. Larry Williamson, M.D., for complaints of lower extremity pain. (Tr. at 333-39.) Claimant reported poor sleep, leg pain when he walked a lot, and memory problems. (Tr. at 333.) On examination, Claimant was alert, oriented, well-developed, and in no acute distress. (Tr. at 335.) Cardiovascular exam was normal, with normal heart rate, rhythm, and blood pressure. (<u>Id.</u>) Claimant's gait was normal and he had normal motor strength, sensation, and range of motion. (Tr. at 335-36.) Dr. Williamson noted a normal affect and a euthymic mood, but diagnosed depression and generalized anxiety disorder. (Tr. at 336.) He also assessed hypertension, GERD, primary gout of the knee and other multiple sites, arthralgia of the knees and lower legs, nicotine dependence, primary insomnia, and sleep apnea. (<u>Id.</u>) He prescribed medications for Claimant and referred him to a sleep lab and to psychiatry. (Tr. at 336-37.)

On August 28, 2013, Karl G. Hursey, Ph.D., a State agency reviewing psychologist, opined that Claimant's affective and anxiety-related disorders resulted in mild limitations in maintaining daily activities and social functioning; moderate limitations in maintaining concentration, persistence, or pace; and no episodes of decompensation of extended duration. (Tr. at 72, 86.) Dr. Hursey further opined that Claimant had understanding and memory limitations and was limited moderately in his ability to understand and remember very short and simple instructions, carry out detailed instructions, maintain attention and concentration for extended periods, and respond appropriately to changes in the work setting. (Tr. at 76-78, 90-92.) He opined that Claimant was capable of maintaining "concentration at least for simple, familiar, routine, repetitive tasks over a typical work period." (Tr. at 77, 91.) Based on the medical evidence of record, Dr. Hursey concluded that Claimant retained the "mental/emotional capacity to carry out simple, routine tasks

8

within the limitations identified above and within any physical limitations that might be found."
(Tr. at 78, 92.)

Dr. Kip Beard, M.D., conducted a physical consultative examination on September 10, 2013, at the request of the West Virginia DDS. (Tr. at 340-48.) Claimant reported his last gout flare involved his right knee last month and estimated five or six flares per year. (Tr. at 340.) Claimant also complained of chronic joint pain that involved his left hand, both hips, knees, ankles, and feet. (Id.) The pain was reported as intermittent, graded at a level ten out of ten, was worse later in the day, and was brought about and worsened by walking, running, and working. (Id.) Pain medication and aspirin helped somewhat. (Id.) Dr. Beard observed on physical examination that Claimant ambulated with a normal gait and without aids, stood unassisted, was able to arise from a seat, and was able to step up and down from the exam table. (Tr. at 342.) He appeared comfortable when seated or standing, was able to speak understandably, and could hear and follow instructions without difficulty. (Id.) Claimant had normal heart rate, rhythm, and blood pressure. (Id.) His shoulders revealed some intermittent AC crepitus, without tenderness or pain, and with full range of motion. (Tr. at 343.) Claimant had some limited range of right shoulder motion with mild discomfort and tenderness. (Id.) He had normal grip strength, was able to button and pick up coins with either hand, and could write with the dominant hand without difficulty. (Id.) He exhibited some intermittent popping and slight crepitus in the right knee on extension, with some mild pain and tenderness. (Id.) He had normal bilateral knee range of motion. (Id.) Straight leg raising test was negative in supine and seated positions, he had no weakness, and had normal sensation. (Id.) Claimant was able to heel-walk, toe-walk, tandem walk, and could squat most of the way, with knee pain. (Tr. at 344.)

Dr. Beard assessed osteoarthritis, gout, hypertension, and normal spirometry, consider

9

asthma. (Tr. at 344.) Respecting Claimant's hypertension, Dr. Beard found no end-organ damage. (Id.) Although he had a history of gout, Dr. Beard observed no acute flare and found that the findings were more consistent with some osteoarthritis. (Id.) He had only some mild joint crepitus on examination, preserved range of motion, and no inflammatory arthritis. (Id.) His lungs were clear to auscultation. (Id.) X-rays of the right knee revealed mild degenerative changes and the left knee revealed no significant degenerative process. (Tr. at 345.)

On September 26, 2013, Dr. Pedro F. Lo, M.D., a State agency reviewing consultant, completed a physical RFC assessment, on which he opined that Claimant was capable of occasionally lifting or carrying up to 50 pounds, frequently lift or carry up to 25 pounds; stand, walk, or sit for about six hours in an eight-hour workday; frequently climb ramps or stairs, balance, stoop, crouch, or crawl; and occasionally climb ladders, ropes, or scaffolds and kneel. (Tr. at 74-76, 88-90.) Claimant's ability to reach in front, laterally, or overhead with the right arm was limited due to limited range of right elbow motion. (Tr. at 75, 89.) Dr. Lo opined that Claimant should avoid concentrated exposure to temperature extremes and hazards. (Tr. at 75-76, 89-90.) In support of these environmental limitations, Dr. Lo noted that Claimant had breathing intolerance in the heat and was a smoker. (Tr. at 76, 90.) He acknowledged normal chest x-rays on April 9, 2013. (Id.) He also noted the reports of gout and osteoarthritis of Claimant's right knee, but found that the Allpurinol should have controlled most of his acute attacks and that he was able to function between acute gout attacks. (Id.) Right knee x-rays demonstrated only mild degenerative changes. (Id.) Dr. Lo therefore, assessed a medium exertional level and found that Claimant was only partially credible. (Id.)

A polysomnogram report on October 6, 2013, demonstrated mild obstructive sleep apnea, fragmented inefficient sleep, and reduced slow wave sleep. (Tr. at 378-79.) A repeat

polysomnogram on December 5, 2013, revealed obstructive sleep apnea, controlled with CPAP; reduced sleep efficiency; and improved slow wave sleep. (Tr. at 375.)

On January 7, 2014, Claimant saw Dr. Williamson for complaints of left foot pain and a knot on his right eye. (Tr. at 352, 427.) Claimant reported gout attacks every three to four months and pain upon walking that improved when he stopped to rest. (Id.) On examination, Claimant was alert, oriented, well-developed, and in no acute distress. (Tr. at 353, 428.) Cardiovascular exam was normal. (Tr. at 354, 429.) He complained of pain in the fifth toe of the right foot, though he had normal range of motion of all extremities. (Id.) Sensation, motor strength, gait, and deep tendon reflexes all were normal. (Id.) Claimant's mood and affect were normal. (Id.)

On February 18, 2014, Dr. Jack W. Casas, M.D., found that the lower arterial study/sonogram, failed to reveal any evidence of significant flow that limited peripheral vascular disease. (Tr. at 417.)

Claimant presented to Gongqiao Zhang, PA-C, supervised by Dr. Amelia McPeak, on March 14, 2014, to evaluate psychiatric signs and symptoms and identify treatment needs. (Tr. at 362-65.) Claimant reported depression with a one year history, associated with an increased appetite, a nonexistent energy level, poor sleep patterns, feelings of hopelessness and helplessness, feelings of guilt, suicidal thoughts in the past, difficulty concentrating, anxiousness and worry, feelings of jitteriness and being on edge, and irritability and anger. (Tr. at 362.) Claimant reported that he used cocaine two days prior to the exam, and recently used Xanax for the first time. (Tr. at 363.) Claimant denied any significant physical complaints. (Tr. at 364.) P.A. Zhang observed that Claimant had a normal gait, was oriented and cooperative, exhibited mild psychomotor agitation, had normal speech and thought process, and exhibited a depressed and anxious mood and constricted affect. (Id.) Fund of knowledge was average, insight and judgment were fair, and

memory, attention, and concentration were intact. (Id.) P.A. Zhang diagnosed major depressive disorder, recurrent, moderate, with anxious distress, without psychotic features; and alcohol use, cocaine use, benzodiazepine use, and marijuana use disorders, rule out history and withdrawal. (Tr. at 364-65.) P.A. Zhang prescribed Cymbalta to target Claimant's depression, anxiety, and possibly pain. (Tr. at 365.) Claimant's prognosis was assessed as guarded. (Id.)

On March 24, 2014, P.A. Zhang noted that he last saw Claimant on March 14, 2014, at which time the urine drug screen tested positive for cocaine and alcohol. (Tr. at 360.) Claimant reported on February 13, 2014, however, that he had never used cocaine. (Tr. at 368.)

Claimant presented for follow-up with P.A. Zhang on April 18, 2014, at which time he complained of further feelings of depression and anxiety. (Tr. at 407-08.) P.A. Zhang noted increased depression and discontinued Cymbalta and started Lexapro. (Tr. at 408.)

On April 23, 2014, Claimant presented to Dr. Michael A. Morehead, M.D., for complaints of insomnia. (Tr. at 410-13.) Physical exam revealed normal heart rate and rhythm, normal motor strength and reflexes, intact sensation, normal gait and an ability to stand without difficulty, and a normal mood and affect. (Tr. at 411-12.) Dr. Morehead assessed obstructive sleep apnea, insomnia, and depression. (Tr. at 412.)

Claimant returned to Dr. Williamson on May 1, 2014, with complaints of left leg pain and right gout flare up. (Tr. at 394-97.) Claimant reported that he was working at the Mango Latin Bistro. (Tr. at 394.) He reported that his left knee began hurting a few days ago and was red, swollen, and very tender to the touch. (Id.) On examination, Dr. Williamson noted that Claimant was alert and oriented and had normal motor strength and gait, but swelling of the left knee, with redness, warmth, and tenderness. (Tr. at 396.) Dr. Williams assessed primary gout of the knee and referred Claimant to a rheumatologist. (Tr. at 397.)

12

On May 5, 2014, Claimant followed-up with P.A. Zhang for depression. (Tr. at 404.) Claimant reported that he had done better on Lexapro. (Id.) He denied significant low mood or depression, episodes of mania, and hallucinations or delusions, paranoia. (Id.) P.A. Zhang observed that Claimant was cooperative, had normal mood and constricted affect, had intact attention and concentration and limited insight and judgment. (Id.) He noted that Claimant was better on the current medications. (Tr. at 405.)

On May 23, 2014, Dr. Williamson acknowledged Claimant's reports of bilateral leg pain, left greater than the right. (Tr. at 388.) Claimant stated that his legs felt much better with hydrocodone and prednisone. (Id.) Physical and mental exams were normal and Dr. Williamson assessed primary gout of knee and restless leg syndrome. (Tr. at 388-91.) On July 10, 2014, Claimant was treated by Dr. Williamson for toe pain. (Tr. at 443.) Claimant reported that he had not taken medication for his gout in two weeks because the pharmacy had run out. (Id.) On physical examination, Dr. Williamson observed swelling without tenderness of the left fifth finger and swelling of the right great toe, with tenderness and warmth. (Tr. at 446.) Dr. Williamson assessed gout and restless leg syndrome and prescribed medication. (Tr. at 447.)

On July 28, 2014, P.A. LeeAnn Reed treated Claimant's depression. (Tr. at 401-03.) She noted that Claimant's mood was good on Lexapro, without depression or anxiety. (Tr. at 401.) Claimant denied any significantly elevated mood or psychosis and reported that his sleep, appetite, and energy were good. (Id.) Mental status exam revealed intact attention and concentration and fair insight and judgment. (Id.) Ms. Reed noted that Claimant was stable and continued his medications. (Tr. at 402.)

On August 27, 2014, Claimant followed-up with Dr. Williamson for complaints of right hip pain. (Tr. at 439.) Claimant reported that he had been walking a lot, which exacerbated the

13

pain. (Id.) Dr. Williamson did not perform a physical examination, but assessed gout and arthralgia of the knee and lower leg. (Tr. at 441.) The x-rays of Claimant's hips and pelvis on August 31, 2014, were unremarkable. (Tr. at 448.)

On September 3, 2014, Dr. Morehead noted that Claimant had received his CPAP machine and that he did very well for a couple of weeks. (Tr. at 414.) Claimant then reported that he felt the airflow was excessive and that he was unable to exhale as he did before. (Id.) Claimant indicated that he was returning the machine for inspection. (Id.)

On September 25, 2014, Tere Clegg, Claimant's employer at the Mango Latin Bistro, submitted a letter to Claimant's attorney, which indicated that Claimant was employed part-time. (Tr. at 211.) Ms. Clegg reported that she had observed Claimant get hand and finger cramps that prevented him from lifting or grasping items. (Id.) She further noted that Claimant's fingers sometimes locked in a bent position, which resulted in several minutes of pain. (Id.) She also reported that Claimant's knees, at times, swelled and caused difficulty walking, with pain. (Id.) He would take a step and his leg buckled, which caused him to scream out loud. (Id.) Ms. Clegg noted that Claimant was allowed to take unscheduled breaks, and that there were days where Claimant had to stop, sit, and rub his hands to alleviate cramps and pain for nearly15 minutes at a time. (Id.) By the end of his shift, Ms. Clegg noted that Claimant was limping and had difficulty standing. (Id.)

On October 22, 2014, Claimant was examined by Dr. Williamson for complaints of leg pain and weakness. (Tr. at 433.) Claimant reported left greater than right leg pain that was aggravated by walking and left great toe pain. (Id.) Physical exam revealed normal movement of all extremities, redness and tenderness of the third left toe, right great toe swelling with warmth and tenderness, and normal motor strength, gait, and stance. (Tr. at 436.) Dr. Williamson assessed

gout and arthralgia of the knee and lower extremity and referred Claimant for neurological consult. (Tr. at 437.)

On December 19, 2014, Claimant was evaluated by Dr. Jay A. Bauerie, M.D., for complaints of lower extremity pain. (Tr. at 453-54.) Claimant reported low back pain, bilateral lower extremity weakness and pain ranging from the hips to the feet bilaterally, left worse than right. (Tr. at 453.) Dr. Bauerie completed an EMG and nerve conduction study, and assessed lumbar or L/S radiculopathy, lateral popliteal neuropathy, and other unspecified anomalies of the nervous system. (Tr. at 454.) Dr. Bauerie noted that Claimant tolerated the electromyographic examination with difficulty and the examination was halted prior to interpretation at Claimant's request. (Tr. at 453.)

Also on December 19, 2014, Dr. Williamson noted that Claimant's EMG/NCV test showed no abnormalities and recommended a lumbar spine x-ray. (Tr. at 452.)

Claimant's Challenges to the Commissioner's Decision

Claimant first alleges that the Commissioner's decision is not supported by substantial evidence because the ALJ erred in assessing Claimant's RFC when he failed to include limitations for his moderate deficiencies in concentration, persistence, or pace in the hypothetical question to the VE and the resulting mental RFC assessment. (Document No. 11 at 11-14.) Claimant asserts that the ALJ simply limited him to performing simple, repetitive, routine work, which did not account for the moderate limitations in maintaining concentration, persistence, or pace. (Id. at 12.) Citing Mascio v. Colvin, 780 F.3d 632 (4th Cir. 2015), Claimant asserts that work requiring only simple instructions continues to require the ability to focus and stay on task, which is inconsistent with the ALJ's findings of moderate deficiencies. (Id.) In finding the moderate mental limitations, the ALJ gave great weight to the opinion of Dr. Hursey. (Id.) Despite such finding, Claimant asserts

15

that the ALJ disregarded Dr. Hursey's assessment of marked limitations in Claimant's ability to understand and remember very short and simple instructions, to maintain attention and concentration for extended periods, and to respond appropriately to changes in work settings. (Id. at 12-13.) Furthermore, the ALJ's hypothetical question to the VE included only limitations to simple, repetitive, routine tasks. (Id. at 13.) Consequently, Claimant contends that the hypothetical inadequately described his limitations. (Id.) The VE's testimony therefore, was unreliable as the hypothetical was not supported by substantial evidence. (Id. at 14.)

In response, the Commissioner asserts that Claimant misconstrues the holding in Mascio, which has been interpreted to not establish a *per se* rule linking moderate mental limitations to a specific RFC. (Document No. 16 at 14.) Rather, the Commissioner contends that caselaw holds that the dictates of Mascio are met when the ALJ accommodates the actual limitations and the decision considers all the relevant evidence. (Id. at 14-16.) Citing Winschel v. Commissioner, 631 F.3d 1176, 1180 (11th Cir. 2011), as cited in Mascio, the Commissioner asserts that when the evidence demonstrates that a claimant can perform simple, routine tasks or unskilled work despite limitations in concentration, persistence, or pace, a hypothetical including only unskilled work sufficiently accounted for such limitations. (Id. at 16.) The Commissioner contends that the ALJ explained why Claimant's moderate limitations in concentration, persistence, or pace were met by the RFC for simple, repetitive tasks. (Id. at 17.) Furthermore, the ALJ gave great weight to Dr. Hursey's opinion that Claimant had moderate limitations in maintaining concentration, persistence, or pace, but nevertheless could maintain concentration for simple, familiar, routine, repetitive tasks. (Id.) The Commissioner notes that the ALJ acknowledged findings of intact attention, concentration, and memory; Claimant's reports of "ok" attention and an ability to complete tasks; and Claimant's ability to work part time. (Id. at 17-18.) Accordingly, the

16

Commissioner contends that the ALJ's mental RFC assessment complied with <u>Mascio</u>, and was supported by Dr. Hursey's opinion and the substantial evidence of record. (<u>Id.</u> at 18.)

Claimant asserts in reply that the ALJ's error was very similar to the facts of the <u>Mascio</u> case. (Document No. 18 at 1.) He further asserts that although the ALJ gave great weight to Dr. Hursey's opinion, he failed to include many of the limitations assessed by Dr. Hursey, in formulating his own RFC. (<u>Id.</u> at 2.) Although Dr. Hursey opined that Claimant was capable of performing simple, routine tasks, Claimant asserts that he qualified the finding to tasks "within the limitations identified." (<u>Id.</u>) Claimant asserts that the ALJ's omission of the qualifier "resulted in a misstatement of the meaning of Dr. Hursey's full opinion." (<u>Id.</u>) Claimant further asserts that <u>Mascio</u> requires remand when the Court is "left to guess about how the ALJ arrived at his conclusions" as to RFC. (<u>Id.</u> at 3.) In this case, the ALJ failed to include all the limitations in the hypothetical question, and therefore, the ALJ's reliance upon the VE and the resulting RFC is not supported by the substantial evidence of record. (<u>Id.</u>)

Claimant also alleges that the Commissioner's decision is not supported by substantial evidence because the ALJ failed to consider the written statement from his employer, as required by 20 C.F.R. §§ 404.1513(d)(4), 416.913(d)(4) and SSR 06-3p. (Document No. 11 at 14-17.) Claimant asserts that although the ALJ is not required to reference every piece of evidence in his decision, the failure to consider evidence is harmless when the claimant is prejudiced by the omission. (<u>Id.</u> at 15.) Claimant contends that he was prejudiced by the ALJ's repeated reference to his work as a head cook in discussing his credibility and RFC determinations. (<u>Id.</u>) The ALJ failed to acknowledge any of the limitations Claimant's employer mentioned in the letter. (<u>Id.</u> at 16.) Furthermore, when the VE was asking to include a sit/stand option with the need to change position every half hour, the VE responded that work was unavailable. (<u>Id.</u>) Claimant consequently

17

contends that the ALJ failed to comply with the applicable ruling and regulations when he failed to consider all the available credible evidence. (Id. at 16-17.)

In response, the Commissioner asserts that contrary to Claimant's allegation, the ALJ cited to the employer's letter and discussed its contents during the administrative hearing. (Document No. 16 at 18.) The Commissioner further asserts that the employer failed to provide any information that contradicted the ALJ's findings. (Id.) The Commissioner notes that the Regulations and Rulings indicate that evidence from other sources may provide insight into the severity of the impairment and how it affects the claimant's ability to function, but does not establish the existence of a medically determinable impairment. (Id.) Although the ALJ acknowledged the employer's letter in his decision and summarized and discussed it during the administrative hearing, the ALJ failed to assign any weight to the letter. (Id. at 19.) The Commissioner contends however, that the ALJ's failure to further discuss the letter was harmless error. (Id.) She explains that as a layperson, the employer lacked any medical training and failed to provide any detail that would have allowed the ALJ to determine that the employer's observations were consistent with the medical record. (Id.) The error further is harmless because the ALJ thoroughly discussed the medical evidence that supported his assessed RFC. (Id. at 20.) Remand to assign a weight to the employer's letter therefore, "would serve only to correct a formality" as the letter "in no way contradicts the ALJ's findings or offers substantive evidence." (Id. at 21.)

Claimant asserts in reply that the error was not harmless because the employer's letter corroborated his symptoms and limitations, which demonstrated Claimant's inability to perform even the part-time work without substantial accommodation by his employer. (Document No. 18 at 3-4.) Claimant contends that had the ALJ considered the employer's statement, it would have

had a bearing upon the ALJ's credibility determination because he relied upon Claimant's ability to perform part-time work. (Id. at 3.) It also would have affected the ALJ's RFC assessment, as the employer clearly stated that Claimant was unable to perform the functional capacities the ALJ included in his RFC. (Id. at 3-4.) Accordingly, Claimant asserts that the ALJ's failure to consider the employer's statement and assign it weight was not reversible error and requires remand. (Id. at 4.)

Finally, Claimant alleges that the Commissioner's decision is not supported by substantial evidence because the evidence from Dr. Bauerie, which was submitted to the Appeals Council, warrants changing the ALJ's decision. (Document No. 11 at 17-20.) Claimant asserts that Dr. Bauerie's records were accepted by the Appeals Council as new and material evidence. (Id. at 17.) Claimant also asserts that the ALJ was aware of the existence of the records but closed the record and issued his decision prior to its receipt. (Id.) Claimant therefore contends that he has met the good cause requirement. (Id.) Claimant also asserts that the evidence has been submitted, and therefore, he made a general showing of the evidence. (Id. at 17-18.) Claimant maintains that the Appeals Council's failure to provide a rationale for its decision was erroneous because the record failed to explain adequately the Commissioner's decision. (Id. at 18.) Claimant asserts that the ALJ identified an evidentiary gap when he stated that Dr. Williamson's December 19, 2014, treatment note indicated an abnormal EMG, but failed to include any objective findings or limitations. (Id. at 19.) Claimant further notes that the ALJ relied on the absence of objective findings to find that Claimant's allegations of leg pain were not credible. (Id.) Dr. Bauerie's EMG and nerve conduction studies confirmed lumbar radiculopathy and neuropathy, which could have explained Claimant's complaints of leg pain. (Id.) Accordingly, Claimant contends that the ALJ's credibility determination would have been different, which could have led to a different RFC assessment and

possible decision. (Id.)

In response, the Commissioner asserts that Dr. Bauerie's two pages of evidence "does not diminish the substantial evidence found by the ALJ in determining that [Claimant] is not disabled." (Document No. 16 at 21.) Contrary to Claimant's assertion, the Commissioner asserts that evidence submitted to the Appeals Council need only be new and material and that there is no good cause requirement. (Id.) Rather, once the Appeals Council accepts evidence into the record, the District Court must review the record as a whole to determine whether substantial evidence supports the ALJ's decision. (Id.) The Commissioner contends that although Dr. Bauerie's studies demonstrated radiculopathy and neuropathy, Dr. Bauerie did not offer any opinions on the severity of Claimant's conditions or how the conditions affected his ability to work. (Id. at 22.) Furthermore, the evidence demonstrated that many of Dr. Bauerie's findings were inconclusive because Claimant failed to complete the EMG. (Id.) Accordingly, the Commissioner contends that Dr. Bauerie's study did not contradict the ALJ's findings. (Id.)

Claimant asserts in reply that the Commissioner's rationale is post hoc and does not cure the Appeals Council's error when it provided no rationale. (Document No. 18 at 4.) Citing Meyer v. Astrue, 662 F.3d 700, 706-07 (4th Cir. 2011), Claimant asserts that remand is required because the *post hoc* rationale provided by the Commissioner cannot cure the error made by the Appeals Council.

Analysis.

1. Mental RFC.

Claimant first alleges that the ALJ erred in assessing his RFC when he failed to include limitations for his moderate deficiencies in concentration, persistence, or pace, in the hypothetical question presented to the VE and the resulting RFC assessment. (Document No. 11 at 11-14.) "RFC

represents the most that an individual can do despite his or her limitations or restrictions." <u>See</u> Social Security Ruling 96-8p, 1996 WL 374184, *1 (July 2, 1996). Pursuant to SSR 96-8p, the RFC assessment "must be based on all of the relevant evidence in the case record," including "the effects of treatment" and the "limitations or restrictions imposed by the mechanics of treatment; e.g., frequency of treatment, duration, disruption to routine, side effects of medication." <u>Id.</u> at *5. The Ruling requires that the ALJ conduct a "function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." <u>Id.</u> at *3. This function-by-function analysis enables the ALJ to determine whether a claimant is capable of performing past relevant work, the appropriate exertional level for the claimant, and whether the claimant is "capable of doing the full range of work contemplated by the exertional level." <u>Id.</u> Looking at all the relevant evidence, the ALJ must consider the claimant's ability to meet the physical, mental, sensory and other demands of any job. 20 C.F.R. § 404.1545(a) (2014). "This assessment of your remaining capacity for work is not a decision on whether you are disabled, but is used as the basis for determining the particular types of work you may be able to do despite your impairment(s)." <u>Id.</u> "In determining the claimant's residual functional capacity, the ALJ has a duty to establish, by competent medical evidence, the physical and mental activity that the claimant can perform in a work setting, after giving appropriate consideration to all of her impairments." <u>Ostronski v. Chater</u>, 94 F.3d 413, 418 (8th Cir. 1996).

In determining a claimant's RFC, the ALJ "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." <u>Id.</u> at *7.   The ALJ also must "explain how any material inconsistencies or ambiguities, in the evidence in the case record were considered and resolved." <u>Id.</u>

In <u>Mascio v. Colvin</u>, 780 F.3d 632, 636 (4th Cir. 2015), the Fourth Circuit observed that SSR 96-8p "explains how adjudicators should assess residual functional capacity. The Ruling instructs that

the residual functional capacity 'assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions' listed in the regulations." It is only after the function-by-function analysis has been completed that RFC may "be expressed in terms of the exertional levels of work." Id. The Court noted that the ruling must include a narrative as to how the evidence supports each conclusion, citing specific medical facts and non-medical evidence. Id. The Fourth Circuit further noted that a per se rule requiring function-by-function analysis was inappropriate "given that remand would prove futile in cases where the ALJ does not discuss functions that are 'irrelevant or uncontested." Id. Rather, the Fourth Circuit adopted the Second Circuit's approach that "remand may be appropriate...where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." Id. (Citing Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013)); see also, Ashby v. Colvin, Civil Action No. 2:14-674 (S.D. W.Va. Mar. 31, 2015).

In the instant case, the ALJ found that mentally, Claimant was "limited to simple repetitive routine tasks." (Tr. at 19.) In making this assessment, the ALJ found that Claimant had mild limitations in maintaining daily activities and social functioning; moderate limitations in maintaining concentration, persistence, or pace; and no episodes of decompensation of extended duration. (Tr. at 18.) Regarding concentration, persistence, or pace, the ALJ acknowledged Claimant's reports that he was able to pay bills and count change, watched television all day, and worked part-time as a head cook. (Id.) In assessing Claimant's RFC, the ALJ presented a hypothetical question to the VE that asked the VE to consider a person of Claimant's age, education, and work history, who was capable of performing medium exertional level work, with postural and environmental limitations, and a limitation to "simple, repetitive, and routine tasks."

(Tr. at 45.) The VE responded that such a person could perform Claimant's past relevant work as a produce stocker or stocker and store laborer. (Tr. at 46.) The VE further testified that such an individual could perform the jobs of a hand packer, dining room attendant, and cleaner. (Id.)

In Mascio, the Fourth Circuit held that an ALJ does not account "for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work." Mascio, 780 F.3d at 638. The Fourth Circuit reasoned that "the ability to perform simple tasks differs from the ability to stay on task. Only the latter limitation would account for a claimant's limitations in concentration, persistence, or pace." Id. Consistent with the holding in Mascio, the undersigned finds that the ALJ failed to account for Claimant's limitations in maintaining concentration, persistence, or pace. He failed to explain the exclusion of such limitations in his hypothetical question to the VE. The ALJ simply noted that Claimant could pay bills, count change, and watch television. (Tr. at 18.) The mention of these activities did not explain why Claimant's ability to maintain concentration, persistence, or pace were moderately limited and how the moderate limitation was included in the ability to perform simple, repetitive, and routine tasks. The ALJ acknowledged Ms. Gettman-Hughes' finding of moderately impaired judgment and concentration and mildly impaired persistence. (Tr. at 22.) He further gave great weight to Dr. Hursey's opinion that Claimant could perform simple routine tasks despite moderate limitations in concentration, persistence, or pace. The ALJ however, failed to acknowledge Dr. Hursey's opinion that Claimant had the mental capacity to perform simple, routine tasks "within the limitations identified." This District Court recognized in Pritt v. Colvin, Civil Action No. 5:13-cv-10036, 2014 WL 2818680, *15 (S.D. W.Va. June 3, 2014), that it was reasonable to conclude that the term "moderate" does not "mean anything less than 20% - 30% of the time at work." (internal citations omitted). Thus, the ALJ failed to make a correlation between the ability to perform simple, routine tasks and moderate limitations in

concentration, persistence, or pace, in the hypothetical question to the VE.

The ALJ acknowledged Dr. Hursey's opinion that Claimant had the ability to carry out simple, routine tasks, and gave his opinion great weight as it was consistent with the treatment notes from P.A. Zhang. (Tr. at 23.) The ALJ assigned great weight to Dr. Hursey's opinion as it was consistent with the treatment notes from P.A. Zhang. (Id.) As Claimant notes however, the ALJ failed to acknowledge that Dr. Hursey qualified his opinion that Claimant was capable of performing simple, routine tasks to the extent that it was within the limitations he identified, including the moderate limitations. (Tr. at 78, 92.)

The undersigned finds that the ALJ's narrative as to why the limitations were excluded from the hypothetical question is insufficient. The ALJ failed properly to account for Claimant's moderate limitations in maintaining concentration, persistence, or pace when he assessed Claimant's mental RFC, and therefore, the undersigned finds that remand is required for further consideration of Claimant's mental RFC.

2.  Evidence from Employer.

Claimant also alleges that the ALJ erred in failing to consider the written statement from his employer. (Document No. 11 at 14-17.) The Regulations provide that evidence from other sources may be used to show the severity of a claimant's impairment and may come from "[o]ther non-medical sources (for example, spouses, parents and other care-givers, siblings, other relatives, friends, neighbors, and clergy)." 20 C.F.R. §§ 404.1513(d)(4) and 416.913(d)(4) (2014). The ALJ acknowledged Ms. Clegg's letter at step one of the sequential analysis when he determined that Claimant had not engaged in substantial gainful activity since his alleged onset date. (Tr. at 16.) The ALJ however, did not mention the letter at any further step of the sequential analysis. The only further mention of the letter by the ALJ was at the administrative hearing, and even then the

24

ALJ did not summarize the opinions as stated by Ms. Clegg. (Tr. at 39-40.) Although Ms. Clegg is considered a layperson for purposes of the Regulations, the undersigned finds that the ALJ erred in failing to consider her letter. Ms. Clegg reported her personal observations of Claimant's ability to work and certain limitations he had when working for her. Undoubtedly, Ms. Clegg did not specify the frequency of his limitations, but her direct observations are of some value in considering Claimant's limitations. Because the ALJ relied heavily on the fact that Claimant maintained part-time work in finding that he was not entirely credible, the undersigned finds that the ALJ's error was not harmless. Accordingly, the undersigned finds that in view of the recommended remand on the prior claim, this matter also should be remanded for further consideration of Claimant's credibility and RFC in light of his employer's stated observations.

   3.   Evidence Submitted to the Appeals Council.

       Finally, Claimant alleges that remand is required for further consideration of the evidence submitted to the Appeals Council. (Document No. 11 at 17-20.) In considering Claimant's argument for remand, the Court notes initially that the social security regulations allow two types of remand. Under the fourth sentence of 42 U.S.C. § 405(g), the court has the general power to affirm, modify or reverse the decision of the Commissioner, with or without remanding the cause for rehearing for further development of the evidence.   42 U.S.C. § 405(g); Melkonyan v. Sullivan, 501 U.S. 89, 97-98, 111 S.Ct. 2157, 2163, 115 L.Ed.2d 78 (1991). Where there is new medical evidence, the court may remand under the sixth sentence of 42 U.S.C. § 405(g) based upon a finding that the new evidence is material and that good cause exists for the failure to previously offer the evidence.   42 U.S.C. § 405(g); Melkonyan, 501 U.S. at 98, 111 S.Ct. at 2163.   The Supreme Court has explicitly stated that these are the only kinds of remand permitted under the statute.   Melkonyan, 501 U.S. at 98, 111 S.Ct. at 2163.

To justify a remand to consider new evidence submitted to the Appeals Council, Claimant must demonstrate that the evidence is new, material, and relates to the period on or before the ALJ's decision. Wilkins v. Secretary of Dep't of Health & Human Servs., 953 F.2d 93, 96 n.3 (4th Cir. 1991). Evidence is considered new within the meaning of 42 U.S.C. § 405(g), "if it is not duplicative or cumulative." Id. at 96. Evidence is considered material "if there is a reasonable possibility that the new evidence would have changed the outcome." Id.

With regard to the new evidence submitted to the Appeals Council, the undersigned finds that the evidence is not material. Claimant submitted two pages of EMG and nerve conduction studies by Dr. Bauerie, which demonstrated lumbar or L/S radiculopathy, lateral popliteal neuropathy, and other unspecified anomalies of the nervous system. (Tr. at 453-54.) Dr. Bauerie noted that the exam was incomplete as Claimant discontinued it as he tolerated the testing with difficulty. (Tr. at 453.) The evidence neither contains any assessed limitations resulting from the conditions, nor indication as to the severity of the assessments. Accordingly, there are no opinions or findings that would have suggested the ALJ would have changed his opinion as to the assessed impairments, RFC, or the ultimate finding of disability. The evidence neither adds to nor subtracts from the evidence considered by the ALJ. For these reasons, the undersigned finds that Claimant's arguments are without merit and that the evidence submitted to the Appeals Council does not warrant remand.

For the reasons set forth above, it is hereby respectfully **PROPOSED** that the District Court confirm and accept the foregoing findings and **RECOMMENDED** that the District Court **GRANT** the Plaintiff's Motion for Judgment on the Pleadings (Document No. 11.), **DENY** the Defendant's Motion for Judgment on the Pleadings (Document No. 16.), **REVERSE** the final decision of the Commissioner, **REMAND** this matter pursuant to sentence four of 42 U.S.C. 405(g) for further administrative proceedings for further consideration of Claimant's impairments

at step three of the sequential analysis, and **DISMISS** this matter from the Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Thomas E. Johnston, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155, 106 S.Ct. 466, 475, 88 L.Ed.2d 435 (1985), reh'g denied, 474 U.S. 1111, 106 S.Ct. 899, 88 L.Ed.2d 933 (1986); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir.), cert. denied, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.Ed.2d 352 (1984). Copies of such objections shall be served on opposing parties, District Judge Johnston, and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to send a copy of the same to counsel of record.

Date: May 24, 2016.

27

Omar J. Aboulhosn
United States Magistrate Judge